IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WYNDHAM VACATION RESORTS, INC., formerly known as FAIRFIELD RESORTS, INC., | ) ) ) | CV. NO. 08-00236 DAE-LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ARCHITECTS HAWAII LIMITED; GROUP PACIFIC (HAWAII), INC.; DICK PACIFIC CONSTRUCTION CO., LTD., | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| ARCHITECTS HAWAII LIMITED, | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| NOTKIN HAWAII, INC.; DICK PACIFIC CONSTRUCTION CO., LTD.; JOHN DOES 1-10; JANE DOES 1-20; DOE PARTNERSHIPS 1-20; DOE CORPORATIONS 1-20; DOE ENTITIES 1-20; and DOE GOVERNMENTAL UNITS 1-20, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Third-Party Defendants. | ) | |
| _____ | ) | |

ORDER DENYING ARCHITECTS HAWAII LIMITED'S
MOTION FOR RECONSIDERATION OR FOR
CERTIFICATE OF INTERLOCUTORY APPEAL

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for

disposition without a hearing.  After reviewing Architects Hawaii Limited's

motion and the supporting and opposing memoranda, the Court **DENIES** the

Motion for Reconsideration or for Certificate of Interlocutory Appeal.  (Doc. #

234.)

BACKGROUND

The parties are familiar with the facts of this case, and the Court

recounts only those facts pertinent to disposition of the instant motion.

Wyndham Vacation Resorts, Inc. ("Wyndham" or "Owner" when

referencing prior owners of the project) is the owner of the construction project

known as Fairfield Hawaii at Waikiki Resort (the "Project"), which consists of a

timeshare conversion of the Outrigger Hotels' Ohana Reef Hotel located on Lewers

Street in Waikiki, Hawaii.  The Project includes converting approximately 420

hotel rooms in two towers, as well as renovations of related public spaces, amenity

spaces, and support facilities. (Doc. # 152 at 4.)  In particular, whirlpool jetted

bathtubs were to be installed in certain bathrooms.

2

Wyndham retained Architects Hawaii Limited ("AHL") as architectural and design consultant, and contracted with AHL to perform architectural and building engineering design services for the Project.  Notkin, a subconsultant of AHL, was retained by AHL as the mechanical engineer for the Project.  Group Pacific (Hawaii), Inc. ("GPH"), acted as Wyndham's project manager in 2004 and 2005. (Doc. # 180 at 6.)  Dick Pacific Construction Co., Ltd. ("Dick Pacific"), was the general contractor for the Project.

On December 16, 2009, Wyndham filed a Motion for Summary Judgment against AHL, Count I of the First Amended Complaint.  (Doc. # 180.)  Wyndham claimed that AHL breached its contract by installing, or allowing subconsultants to install, non-jetted bathtubs instead of whirlpool jetted bathtubs at the Project site.  On March 10, 2010, this Court filed an Order Granting Plaintiff's Motion for Summary Judgment (the "Summary Judgment Order").  (Doc. # 229.)

On March 24, 2010, AHL filed the instant Motion for Reconsideration.  (Doc. # 234.)  AHL also requests in the alternative that the Court certify the Summary Judgment Order for appeal.  On March 31, 2010, Wyndham filed an Opposition.  (Doc. # 245.)  On April 14, 2010, AHL filed a Reply.  (Doc. # 254.)  On May 7, 2010, Notkin filed a Statement of Position, requesting that the

Summary Judgment Order and any judgments issued herein not be imputed to

Notkin.  (Doc. # 253.)

## STANDARD OF REVIEW

The disposition of a motion for reconsideration is within the discretion

of the district court.  Lolli v. County of Orange, 351 F.3d 410, 411 (9th Cir. 2003);

Plotkin v. Pac. Tel. & Tel. Co., 688 F.2d 1291, 1292 (9th Cir. 1982).  This rule

derives from the compelling interest in the finality of judgments, which should not

be lightly disregarded.  Rodgers v. Watt, 722 F.2d 456, 459 (9th Cir. 1983);

Carnell v. Grimm, 872 F. Supp. 746, 758 (D. Haw. 1994).

The Ninth Circuit requires a successful motion for reconsideration to

furnish both a reason why the court should reconsider its prior decision, as well as

facts or law of a strongly convincing nature to induce the court to reverse its prior

decision.  Carnell, 872 F. Supp. at 758.  Mere disagreement with a previous order

is an insufficient basis for reconsideration, and reconsideration may not be based

on evidence and legal arguments that could have been presented at the time of the

challenged decision.  See Haw. Stevedores, Inc. v. HT & T Co., 363 F. Supp. 2d

1253, 1269 (D. Haw. 2005).

A motion for reconsideration under Rule 59(e) should not be granted,

absent highly unusual circumstances, unless the district court: (1) is presented with

4

newly discovered evidence; (2) has committed clear error; or (3) if there is an intervening change in the controlling law.  389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999) (citation omitted).  In addition, a Rule 59(e) motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." Kona Enterprises, Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000) (citation omitted).

Pursuant to Local Rule 6.1, motions for reconsideration of interlocutory orders may be brought only upon discovery of new material facts not previously available, the occurrence of an intervening change in law, or proof of manifest error of law or fact.  Reliance Ins. Co. v. Doctors Co., 299 F. Supp. 2d 1131, 1153 (D. Haw. 2003).

### DISCUSSION

In the Summary Judgment Order, the Court found, inter alia, that there were no genuine issues of fact and Wyndham did not assent to or ratify the modification to install non-jetted tubs.  The Court granted summary judgment for Wyndham against AHL for breach of contract.

The gravamen of AHL's motion for reconsideration is that genuine issues of material fact exist as to whether Owner assented to or ratified the tub

5

modification.[1]  AHL believes that granting Wyndham's motion for summary

judgment was improper, and that the Court did not consider the facts and

inferences in a light most favorable to AHL, the nonmoving party.

AHL contends there were several instances in which this Court erred

when concluding that there are no genuine issues of material fact.  The Court will

evaluate each in turn.  As set forth below, the Court reaffirms its prior conclusion

that there are no genuine issues of material fact.  AHL's interpretations of and

inferences drawn from the undisputed evidence do not warrant submission to a fact

finder.

I.      Approval of the Tub Substitution

It is AHL's theory that when GPH received the December 13, 2004

email from Dick Pacific, which contained pricing estimates from Dick Pacific for

non-jetted tubs, and then forwarded that email to AHL, forwarding that email

---

[1] AHL also argues that the Court improperly relied on various portions of the
Agreement and Project Manual in its Summary Judgment Order.  AHL asserts that
the Court's reliance on these contract provisions "resolved" certain issues in favor
of Wyndham.  (Mot. at 7.)  To the contrary, this Court expressly analyzed, as an
alternative theory, whether the tub substitution was approved or ratified by Owner
even if the Project Manual and Agreement terms were not controlling.  (Summ. J.
Order at 14-17, 19.)  Because the Court disagrees that there is a genuine issue of
fact as to whether Owner assented to or ratified the tub modifications, the question
of whether the Court improperly relied on other additional contract terms to grant
Wyndham's motion for summary judgment is moot.

constituted approval of non-jetted tubs.  This Court ultimately determined in the

Summary Judgment Order that the email could not have constituted assent for non-

jetted tubs because there was no evidence that either GPH or Owner was even

aware that the pricing estimates were for non-jetted tubs.

In the motion for reconsideration, AHL asserts that Joe Davis, as Vice

President of Project Development for Wyndham Vacation Ownership, knew that

the substituted tubs would lack jets, and therefore a genuine issue existed as to

whether Owner approved the substitution.  (Mot. at 8; Mot. Ex. F.)

AHL submits a single email correspondence as evidence of Davis's

knowledge of the non-jetted tub substitution.  (Mot. Ex. F.)  Davis had reviewed a

September 14, 2004 value engineering ("VE") list, which included Item 15.23, the

"Kohler tubs."  In reference to these tubs, Davis's September 24, 2004 email

stated:

> One of my comments on the drawing review was to specify FRI
> standard products, unless Kohler is less expensive in Hawaii.
> Nevertheless, the tub 2 is the whirlpool tub in the master baths where
> the corner tub would not fit.  The whirlpool in the mater bath is a
> Fairfield "sacred cow".  Substitution of a standard tub is NOT
> acceptable.

(Mot. Ex. F. at 2.)  AHL argues that this email reveals that Davis knew the tubs,

specifically K1219 tubs, were non-jetted.

7

The Court's review of the email, however, lead the Court to conclude in the Summary Judgment Order that such a conclusion was not supported by any reasonable interpretation of the text.  Kohler tubs are mentioned only in reference to whether they are less expensive in Hawai`i.  There is no mention of the presence or absence of jets in the Kohler tubs.  "K1219" is not referenced at all.  Davis does reiterate that whirlpool tubs are required, but that is already part of the project specifications.

This Court found in the Summary Judgment Order that none of the documents presented, including Dick Pacific's price quotes, actually stated that the substituted tubs were non-jetted.  (Summ. J. Order at 18.)  This fact has not been disputed by AHL in the motion for reconsideration.  The Court has nothing before it now indicating that this was an erroneous factual finding.  There is not a single piece of evidence submitted to the Court that says anything to the effect of "the price-quoted tubs do not have jets."  There is therefore no evidence upon which a reasonable jury could conclude that any person actually had knowledge that a particular model of tub did or did not have jets.  Whether Davis knew that any particular model did not have jets is pure speculation on the part of AHL, and pure speculation cannot properly form the basis of a Court's denial of summary judgment.

It was therefore proper for the Court to rule on assent or approval at the summary judgment phase because there were no genuine issues of material fact.  It is a well established principle that, when the facts are undisputed, what might ordinarily be a question of fact may be ruled upon by a court as a question of law.  This is particularly true in circumstances when, as here, only one reasonable inference may be drawn.  Whether Owner or its project manager, GPH, approved the change may be a question of law because the facts are undisputed and the evidence is insufficient to be presented to a jury.  See United States v. City of Twin Falls, Idaho, 806 F.2d 862, 869 (9th Cir. 1986), implied overruling on other grounds recognized by Ass'n of Flight Attendants, AFL-CIO v. Horizon Air Indus., Inc., 974 F.2d 541, 552 (9th Cir. 1992).  The Ninth Circuit's statement regarding modification of contracts is instructive here:

> [T]he determination of the parties' intent to modify a contract is a question of fact for the jury.  There is a threshold, however, where the trial judge must first examine the evidence to determine whether there is an actual ambiguity or uncertainty concerning the parties' intent.  If the judge determines that there is no ambiguity, then the court is entitled to rule as a matter of law whether the contract was modified.

Id.; see also Tokuhisa v. Cutter Mgmt. Co., 122 Hawai`i 181, 195 (2009) ("Reasonableness can only constitute a question of law suitable for summary judgment when the facts are undisputed and not fairly susceptible of divergent

9

inferences because where, upon all the evidence, but one inference may reasonably be drawn, there is no issue for the jury" (internal quotations and citations omitted).).

Here, the parties do not dispute the existence or content of the email; the parties dispute the legal implications of the email.  It is improper to submit this matter to the jury when the only existing "conflict" is created by AHL's arguments, not by the actual facts presented.  Argument is not evidence.  This Court is not obligated to give deference to the arguments put forth by AHL's legal counsel.  For instance, there is no evidence before the Court that forwarding an email was ever used in any other occasion to constitute approval (or ratification) of a specification change.

Alternatively, AHL also argues that, even though Davis insisted on whirlpool tubs on September 24, 2004, Owner was "not preclude[d] from changing its mind by December of that year" during the VE process.  (Mot. at 9.)  This is theoretically plausible, but there must be evidence suggesting that Owner did actually change its mind.  It is pure speculation on the part of AHL that Owner would or did change its mind during the VE process.

The Court concludes that AHL fails to present "significant probative evidence" on this issue that warrants substitution to a jury.  T.W. Elec. Serv., Inc.

10

v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First

Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of

evidence or evidence that is merely colorable or not significantly probative does

not present a genuine issue of material fact."  Addisu v. Fred Meyer, Inc., 198 F.3d

1130, 1134 (9th Cir. 2000).  Having no probative evidence that Owner or Davis

knew the substitution had occurred, it was proper for the Court to rule as a matter

of law on whether Owner had assented to the substitution.

II.    GPH's Authority to Approve Substitution

AHL next contends that this Court erred in concluding that GPH did

not have the authority to act for Owner.  (Mot. at 10.)  AHL misconstrues this

Court's Summary Judgment Order, because the Court evaluated AHL's claim in

two alternative ways, one which assumed that GPH had authority to act for Owner.

The Court explicitly stated that, even if GPH had the authority to act for Owner,

there was no evidence that GPH and/or Mark Turner had knowledge of the

substitution.  (Summ. J. Order at 19.)  Therefore, whether GPH had the authority is

moot, because GPH could not have approved a substitution about which it had no

knowledge.

AHL's argument that GPH or Mark Turner had knowledge of the non-

jetted tubs is unfounded.  AHL relies on the content of a memorandum from Dick

11

Pacific, which stated only that Dick Pacific had been unable to obtain the <u>pricing</u>

<u>information</u> for the owner-specific Acryline tub and so Dick Pacific had budgeted

the price of alternative tubs.  AHL does not even argue that Dick Pacific actually

informed anyone that the alternative tubs, used for pricing information, lacked jets.

To the contrary, AHL acknowledges that "Dick Pacific's memorandum did [not]

explicitly state that it had budgeted a non-jetted tub."[2]  (Mot. at 11.)  It is difficult

to discern why AHL nevertheless concludes that "[GPH] was aware that there was

a substitution, and it was aware that the substituted model was non-jetted."  (<u>Id.</u>)

This is a conclusory statement that does not flow logically from the actual

evidence.  GPH could not have approved the substitution without knowing it had

occurred.  AHL has not submitted any evidence that any of the documents that

GPH or Turner may have reviewed actually stated that the tubs were non-jetted.

AHL is not entitled to deference on speculations and unreasonable inferences

drawn from the evidence.

---

[2] AHL's actual sentence includes a typographical error, and reads: "Additionally, even though Dick Pacific's memorandum did [sic] explicitly state that it had budgeted a non-jetted tub, it <u>did</u> state that it could not obtain pricing information for the owner-specific 'Acryline' tub, so it budgeted the K1219." (Mot. at 11 (emphasis in original).)  The sentence is only logical if read to mean that the memorandum did <u>not</u> explicitly state that it had budgeted a non-jetted tub.

III.     Ratification of the Tub Substitution

As this Court explained in the Summary Judgment Order, ratification requires:  (1) the existence of a principal; (2) an act done by a purported agent; (3) knowledge of the material facts by the principal; and (4) an intent by the principal to ratify the act.  Ass'n of Apartment Owners of Maalaea Kai, Inc. v. Stillson, 108 Hawai`i  2, 29 (2005).  The issue here is whether Owner had knowledge of the material facts – the switch to non-jetted tubs.

The Court acknowledges that whether ratification has occurred is often a question of fact for the jury.  See Guaschino v. Eucalyptus, Inc., 3 Haw. App. 632, 640 (Haw. Ct. App. 1983).  This is primarily true, however, when there is a genuine issue of material fact or inference suitable for a jury determination.  See id.  As the Ninth Circuit has summarized: "Whether apparent authority exists or implied ratification has occurred is usually a question for the finder of fact. [Rule 56(e)], however, requires a party opposing a motion for summary judgment to set forth specific facts showing that there is a genuine issue for trial."  Lockwood v. Wolf Corp., 629 F.2d 603, 609 (9th Cir. 1980).  If a party cannot do so, then summary judgment is appropriate.  Id.

As discussed in the Summary Judgment Order, AHL's primary argument for ratification was the fact that Dick Pacific's pricing estimates had been

incorporated into a contract between Wyndham and Dick Pacific and the fact that the submittal was forwarded to AHL for use regarding completion of 100% CDs. The pricing estimates and submittal, however, return to the question of whether Owner had knowledge that the pricing estimates called for non-jetted tubs.  As discussed above, the single email from Davis is not sufficient to demonstrate, or create a genuine issue of fact, that Owner or Davis or GPH had knowledge of the non-jetted tubs.  AHL asks this Court to make inference upon inference to find that they might have known, when there is no evidence to support this conclusion. Moreover, AHL was specifically hired to be fully responsible for the technical accuracy and coordination of designs and for specifications.  (Summ. J. Order at 3.)

The Court is not required to adopt arguments posed by the non-moving party in order to view the evidence in a light most favorable to them.  See Rivera v. Nat'l R.R. Passenger Corp., 331 F.3d 1074, 1078 (9th Cir. 2003) ("Conclusory allegations unsupported by factual data cannot defeat summary judgment."), amended by 340 F.3d 767 (9th Cir. 2003).  The Court concluded that the evidence produced by AHL could not reasonably support is assertions, and AHL's arguments in its motion for reconsideration do reveal an error of law or fact by the Court.

14

Without significantly probative evidence as to whether Owner or GPH had knowledge of the substitution, it was proper for this Court to evaluate whether, as a matter of law, Wyndham was entitled to summary judgment on Count I.

IV.   Estoppel & Mistake Arguments

Finally, AHL relies on either a "mistake" defense or an estoppel defense.  In arguing for mistake or estoppel, however, AHL does not demonstrate a manifest error of law or fact in the Summary Judgment Order.  AHL appears to be litigating these issues beyond the scope of a motion for reconsideration.

AHL's reasonable reliance argument is essentially a new estoppel argument.  AHL states that "a reasonable juror could believe that . . . AHL reasonably interpreted the December 13, 2004 email as a directive to incorporate Dick Pacific's pricing information into the 100% CDs."  (Mot. at 7-8 (emphasis added).)  This is a new variation of the argument made by AHL against the original motion for summary judgment.  AHL's original position was that "there [was] sufficient evidence supporting AHL's defense that the Owner approved and accepted the non-jetted tubs such that AHL is not liable to the Owner for the cost of replacing the non-jetted tubs at issue."  (Doc. # 196 at 3 (emphasis added).)  AHL's original position was that Owner had, or there was an issue of fact as to whether Owner had, actually approved the substitution, either by its own actions or

15

by the actions of GPH.  AHL now argues that AHL could have interpreted

Owner's actions to mean Owner had approved, regardless of whether Owner

actually did approve them.  This argument involves distinct legal questions not

necessarily applicable to the arguments made in the original opposition.  AHL

could have, but did not, meaningfully raise that argument below, and it is not

properly raised in a motion for reconsideration.

   AHL next argues that it cannot be held liable if either Dick Pacific or

GPH is responsible for the mistaken substitution.  The Court has already discussed

AHL's arguments as to GPH and will not revisit them here again.  There is no

genuine issue of fact as to whether GPH was responsible for the substitution

because there is no evidence that GPH had knowledge of the substitution.  As for

whether Dick Pacific was the genesis of the "mistake," AHL does not adequately

argue this point in its motion for reconsideration.  AHL says only: "As set forth in

AHL's various submissions, there are genuine issues supporting AHL's belief that

Dick Pacific generated the 'mistake' by specifying a non-jetted tub in its final

pricing memorandum . . . ."  (Mot. at 14.)  Merely referencing prior argument is

not adequate to prevail on a motion for reconsideration.  AHL must furnish an

actual reason and facts or law of a "strongly convincing nature."  Carnell, 872 F.

Supp. at 758.  Furthermore, AHL's original memorandum in opposition to the

motion for summary judgment argued that Owner had approved the substitution, not that the mistake generated with Dick Pacific.  The issue of whether a mistake was generated by Dick Pacific was not briefed and is not properly asserted in a motion for reconsideration.

Accordingly, AHL's motion for reconsideration is DENIED.

V.    Interlocutory Appeal

In the event this Court declines to reconsider its order, AHL requests that the Court issue a stay and certify the Summary Judgment Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  Section 1292(b) provides that when a district judge is "of the opinion that [an] order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation," the judge shall so state in writing.

The question of law raised in AHL's motion is the summary judgment standard.  There is no difference of opinion as to the law; AHL simply disagrees with this Court's conclusion that there is no genuine issue of material fact.  Such an appeal would not further the purpose of section 1292(b), which was "intended primarily as a means of expediting litigation by permitting appellate consideration . . . of legal questions which, if decided in favor of the appellant, would end the

17

lawsuit." <u>United States v. Woodbury</u>, 263 F.2d 784, 787 (9th Cir. 1959); <u>see also</u> <u>In re Cement Antitrust Litigation</u>, 673 F.2d 1020, 1026 (9th Cir. 1982) ("[T]he legislative history of 1292(b) indicates that this section was to be used only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation.").  That is clearly not the case here, as a ruling for AHL would require that the case go forward to trial as opposed to being resolved at an earlier stage.

<u>CONCLUSION</u>

For the reasons stated above, the Court DENIES AHL's motion for reconsideration or for certificate of interlocutory appeal.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, May 12, 2010.



_____
David Alan Ezra
United States District Judge

Wyndham Vacation Resorts, Inc. v. Architects Hawaii Limited, et al., CV No. 08-00236 DAE-LEK; ORDER DENYING ARCHITECTS HAWAII LIMITED'S MOTION FOR RECONSIDERATION OR FOR CERTIFICATE OF INTERLOCUTORY APPEAL