IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| WYNDHAM VACATION RESORTS, INC.) formerly known as FAIRFIELD ) RESORTS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ARCHITECTS HAWAII LIMITED, ) <br> GROUP PACIFIC (HAWAII), INC., ) <br> DICK PACIFIC CONSTRUCTION CO.,) <br> LTD, ) <br> ) <br> Defendants. ) <br> _____) <br> ) <br> ARCHITECTS HAWAII LIMITED, ) <br> ) <br> Third-Party ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> NOTKIN HAWAII INC.; DICK PACIFIC ) <br> CONSTRUCTION CO., LTD.; JOHN DOES ) <br> 1-20; JANE DOES 1-20; DOE ) <br> PARTNERSHIPS 1-20; DOE ) <br> CORPORATIONS 1-20; DOE ENTITIES ) <br> 1-20; and DOE GOVERNMENTAL UNITS ) <br> 1-20, ) <br> ) <br> Third-Party ) <br> Defendants. ) <br> ) <br> _____) | CIVIL NO. 08-00236 DAE-LEK <br><br> FINDINGS AND RECOMMENDATION TO GRANT GROUP PACIFIC (HAWAII), INC.'S PETITION FOR APPROVAL OF GOOD FAITH SETTLEMENT <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br> Trial Date:  November 16, 2010 |

FINDINGS AND RECOMMENDATION TO GRANT GROUP PACIFIC
(HAWAII), INC.'S PETITION FOR APPROVAL OF GOOD FAITH SETTLEMENT

Before the Court is Defendant GROUP PACIFIC (HAWAII), INC.'s

("GPH") Petition for Approval of Good Faith Settlement ("Petition"), filed

on March 29, 2010.  Plaintiff WYNDHAM VACATION RESORTS, INC. formerly known as FAIRFIELD RESORTS, INC. ("Wyndham") filed its Statement of No Opposition on April 21, 2010.  Defendant ARCHITECTS HAWAII LIMITED ("AHL") filed its Statement of Position on April 21, 2010 and Third-Party Defendant NOTKIN HAWAII INC. ("Notkin") filed its Statement of Position on April 21, 2010.

This matter came on for hearing on May 13, 2010 at 9:30 a.m. The following counsel appeared at the hearing:  Paul R. Grable, Esq., on behalf of GPH, Judy A. Tanaka, Esq., on behalf of Wyndham, Michael L. Biehl, Esq., for AHL and Jane Kwan, Esq., for Notkin.

After careful consideration of the Petition, supporting and opposing memoranda, and the arguments of counsel, this Court HEREBY FINDS AND RECOMMENDS that GPH's Petition be GRANTED for the reasons set forth below.

## BACKGROUND

The facts of this case have been set forth in this Court's previous orders and it does not repeat the same here except as may be relevant to this Petition.

Wyndham was the owner of a construction project, known as the Fairfield Hawaii at Waikiki Resort ("the Project"), which consisted of a 195-unit timeshare conversion of the Outrigger Hotels' Ohana Reef Hotel located on Lewers Street in Waikiki, Hawai`i and included converting

approximately 420 hotel rooms in two towers, as well as renovations of related public spaces, amenity spaces and support facilities.

Wyndham retained AHL as the architectural and design consultant, and contracted with AHL to perform architectural and building engineering design services for the Project.  GPH acted as Wyndham's project manager in 2004 and 2005.  Notkin, a subconsultant to AHL, was retained by AHL as the mechanical engineer for the Project.  Defendant and Third-Party Defendant DICK PACIFIC CONSTRUCTION CO. LTD. ("Dick Pacific") was the general contractor for the Project.

The type of bathtubs to be installed in the units were specified in Wyndham's "Resort Development Standard Manual" ("Project Manual"), dated August 2001.  The Project Manual states: "A Master Bathroom with luxury bathing accommodations is required in all guest units[,]" and that whirlpool jetted bathtubs are required to be installed in all master bathrooms of the units.  Prior to preparing the Project plans, drawings and specifications, AHL was provided with a copy of the Project Manual and was made aware of Wyndham's requirement that whirlpool jetted bathtubs be installed in the master bathrooms of each unit.

In a September 24, 2004 email from Mr. Joe Davis, the then Vice President of Project Developments for Wyndham Vacation Ownership, Inc.,[1] to Mr. Mark Turner of GPH ("September 24 email"), Mr. Davis

---

[1] Wyndham Vacation Ownership, Inc., formerly known as
(continued...)

commented in relevant part:

> the tub 2 is the whirlpool tub in the master baths where the corner tub would not fit.  The whirlpool tub in the master bath is a Fairfield "sacred cow." Substitution of a standard tub is NOT acceptable.

Mr. Turner, in a September 27, 2004 email transmittal, forwarded Mr. Davis' September 24 email to, among others, Mr. Alain Geronimo of AHL.

On December 13, 2004, Dick Pacific sent a cost estimate to GPH.  Within that cost estimate, Dick Pacific quoted prices for Kohler K1219 tubs, which are non-jetted tubs.  GPH received Dick Pacific's cost estimate and then passed that estimate on to AHL without objecting specifically to Dick Pacific's cost analysis.  Dick Pacific was required to submit a pricing estimate.  Because Dick Pacific was unable to contact a local representative for the specific tubs Wyndham wanted installed, Dick Pacific used an estimate from the Kohler K1219 model hot tub instead.  The final version of the pricing estimate did not state that the tubs used in the estimate lacked jets.  Once Dick Pacific submitted that estimate to GPH, GPH passed the estimate on to AHL.  There was no further discussion between GPH or Dick Pacific on the matter.  GPH was not aware of the substitution when GPH passed the estimate on to AHL.

Subsequently, the architectural and mechanical drawings, dated December 31, 2004, prepared and/or approved by AHL, designated "TUB 1" as

---

[1](...continued)
Cendant Timeshare Resorts Group, Inc., is Wyndham's parent corporation.

4

the type of bathtub to be installed in the "Plantation Wing" one-bedroom units, identified in AHL's drawings as "Plantation Wing Unit 21 Floor Plan" ("One-Bedroom Units"), all of which units contained only one bathroom, i.e., the master bathroom, and "TUB 2" as the type of bathtub to be installed in the master bathrooms in certain two-bedroom units and Presidential Units (which consisted of three-bedroom and four-bedroom units) (collectively referred to as the "Two-Bedroom and Presidential Units").[2]  Section 11451 of the Project Specifications prepared by AHL, entitled "Residential Appliances," expressly required that at locations identified on the architectural and mechanical drawings as "TUB 1," non-jetted bathtubs were to be installed, and at locations identified as "TUB 2," whirlpool jetted bathtubs were to be installed.

Thus, the Project specifications and drawings prepared and/or approved by AHL required (1) non-jetted bathtubs (TUB 1) to be installed in the One-Bedroom Units and (2) whirlpool jetted bathtubs (TUB 2) to be installed in the master bathrooms of the Two-Bedroom and Presidential Units.

AHL specified that non-jetted bathtubs were to be installed in the One-Bedroom Units and that whirlpool jetted bathtubs be installed in the master bathrooms of the Two-Bedroom and Presidential Units.  Notkin,

---

[2] Two-bedroom units consisted of Deluxe and Presidential Units.

prepared "Plumbing Fixture Schedule Mechanical Sheet M-004" dated December 31, 2004 ("Mechanical Sheet M-004"), which specified that non-jetted bathtubs be installed at those locations.

Wyndham first discovered that non-jetted bathtubs, instead of the correct whirlpool jetted bathtubs, were being installed in the master bathrooms of the units during a progress walkthrough on or about January 10, 2006.  In January 2006, upon learning that the wrong type of bathtubs had been installed, AHL issued Instruction Notice No. 155, dated January 17, 2006, to Dick Pacific, directing it to promptly stop installing the non-jetted bathtubs and replace them with whirlpool jetted bathtubs.  On or about February 1, 2006, Dick Pacific submitted Change Proposal No. 154R3, which provided for additional, unanticipated work related to the removal and replacement of the 136 non-jetted bathtubs, at a total cost of $591,135.00, for which Wyndham paid.

After having paid Dick Pacific $591,135.00 for the removal and replacement of the 136 non-jetted bathtubs, Wyndham demanded full reimbursement from AHL.  Eventually, Wyndham initiated this lawsuit, naming AHL, GPH and Dick Pacific.  AHL filed a third-party compliant against Notkin.

### SETTLEMENT AGREEMENT BETWEEN WYNDHAM AND GPH

An agreement has been reached to resolve all claims by Wyndham against GPH.  In consideration for the payment of $75,000, Wyndham has

agreed to dismiss its claims against GPH with prejudice and release the company of all liability arising from the incident. GPH filed this Petition to obtain a finding that the agreement to settle Wyndham's claims was made in good faith pursuant to Hawai`i Revised Statutes ("HRS") § 663-15.5(a).

Notkin and AHL have filed position statements with respect to GPH's Petition. Neither Notkin nor AHL argues in opposition to granting the Petition. Instead, they object to the "undisputed facts" in the Petition which outline liability exposure of AHL and Notkin. They also criticize the Petition for failing to outline with specificity GPH's role in the project or the basis for GPH's potential liability. AHL acknowledges that GPH's Petition does outline GPH's potential liability exposure in the argument section of the Petition, but objects because it is much smaller in comparison to the discussion of AHL's liability.

DISCUSSION

Under Hawai`i law, a party must petition the court for a hearing on the issue of whether a settlement was made in good faith and must serve notice to all known joint tortfeasors or co-obligors. See HRS § 663-15.5(b). "The petition shall indicate the settling parties and, except for a settlement that includes a confidentiality agreement regarding the case or the terms of the settlement, the basis, terms, and settlement amount." Id. Any non-settling party may file an objection and such party bears the burden of proving a lack of good faith. See id.

In Troyer v. Adams, the Hawai`i Supreme Court adopted a "totality of the circumstances" approach for the HRS § 663-15.5 analysis of whether a settlement was made in good faith. See 102 Hawai'i 399, 425, 77 P.3d 83, 109 (2003). The court noted that the statute's legislative intent focused more on "encouraging settlements than ensuring the equitable apportionment of liability." See id. at 426, 77 P.3d at 110. The court therefore rejected California's process of conducting "mini-trials" to determine the parties' probable liability before approving a settlement. See id. at 426-27, 77 P.3d at 110-11. The court stated,

> the trial court may consider the following factors to the extent that they are known at the time of settlement: (1) the type of case and difficulty of proof at trial, e.g., rear-end motor vehicle collision, medical malpractice, product liability, etc.; (2) the realistic approximation of total damages that the plaintiff seeks; (3) the strength of the plaintiff's claim and the realistic likelihood of his or her success at trial; (4) the predicted expense of litigation; (5) the relative degree of fault of the settling tortfeasors; (6) the amount of consideration paid to settle the claims; (7) the insurance policy limits and solvency of the joint tortfeasors; (8) the relationship among the parties and whether it is conducive to collusion or wrongful conduct; and (9) any other evidence that the settlement is aimed at injuring the interests of a non-settling tortfeasor or motivated by other wrongful purpose.

Id. at 427, 77 P.3d at 111. These factors are not exhaustive; the court may consider any other relevant factor. See id.

Neither Notkin nor AHL makes any argument that the settlement was not made in good faith or the amount being paid in the settlement is disproportionate to GPH's liability exposure. The non-settling parties

have the burden of proof that the settlement agreement was not made in good faith. See HRS § 663-15.5(b). The settling parties have not introduced any evidence of collusion, fraud, dishonesty or other wrongful conduct. The absence of this evidence requires the Court to conclude that the settlement was in good faith. See Troyer v. Adams, 102 Hawai'i 399, 430, 77 P.3d 83, 110 (2003).

Therefore, after considering the factors set forth in Troyer, the totality of the circumstances, the numerous settlement conferences administered by the Court and after reviewing the essential terms of the settlement, the Court finds that the settlement was reached in good faith for the purposes of HRS § 663-15.5. The Court declines to make the specific finding requested by Notkin that Plaintiff's claim for damages against the remaining parties be reduced by the amount of consideration stipulated in the settlement.

## CONCLUSION

On the basis of the foregoing, the Court HEREBY FINDS AND RECOMMENDS that the district judge GRANT GPH's Petition for Approval of Good Faith Settlement, filed March 29, 2010.

The parties are advised that any objection to this Finding and Recommendation is due seventeen calendar days after being served with a copy of this Findings and Recommendation. See Fed. R. Civ. P. 5(b)(2) & 6(d); Local Rule LR74.2. If an objection is filed with the Court, it shall be captioned

"Objections to Magistrate Judge's Findings and Recommendation."

A copy of the objection shall be served on all parties.

  IT IS SO FOUND AND RECOMMENDED.

  DATED AT HONOLULU, HAWAII, MAY 21, 2010.



          /s/ Leslie E. Kobayashi
          Leslie E. Kobayashi
          United States Magistrate Judge


**WYNDHAM VACATION RESORTS, INC., V. ARCHITECTS HAWAII LIMITED, ET AL.; CIVIL NO. 08-00236 DAE-LEK; FINDINGS AND RECOMMENDATION TO GRANT GROUP PACIFIC (HAWAII), INC.'S PETITION FOR APPROVAL OF GOOD FAITH SETTLEMENT**